IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| In re:<br><br>SNAP KITCHEN INVESTMENTS, LLC, *et al.*,[1]<br><br>    Debtors. | §   Case No. 20-60083<br>§<br>§   Chapter 11<br>§   Subchapter V<br>§<br>§   (Jointly Administered)<br>§ |

**DEBTORS' OMNIBUS MOTION SEEKING ENTRY OF AN ORDER AUTHORIZING (I) THE REJECTION OF CERTAIN UNEXPIRED LEASES AND (II) ABANDONMENT OF CERTAIN PERSONAL PROPERTY, IF ANY, <u>EACH EFFECTIVE AS OF THE PETITION DATE</u>**

---

**LANDLORDS RECEIVING THIS OMNIBUS LEASE REJECTION MOTION SHOULD LOCATE THEIR NAMES AND LEASES IN THE SCHEDULE OF LEASES ATTACHED HERETO AS EXHIBIT A**

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MOTION ON JANUARY __, 2021, AT __:__ .M. IF NO TIMELY RESPONSE IS FILED, THE COURT MAY ENTER AN ORDER ON THIS MOTION WITHOUT HOLDING A HEARING.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGELOPEZ" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON ON THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Snap Kitchen Investments, LLC (4938); Snap Kitchen Management, LLC (4886); Snap Kitchen Services, LLC (4910); Snap Kitchen Dallas, LLC (6157); Snap Kitchen #1, LLC (4938); Snap Kitchen #2, LLC (4948); Snap Kitchen #3, LLC (4589); Snap Kitchen #5, LLC (4635); Snap Kitchen Philadelphia, LLC (9116).

Snap Kitchen Investments, LLC and its debtor affiliates (collectively, the "Debtors"),[2] as debtors and debtors-in-possession in the above-styled chapter 11 proceedings (the "Bankruptcy Cases"), file this *Omnibus Motion Seeking Entry of an Order Authorizing (I) the Rejection of Certain Unexpired Leases and (II) Abandonment of Certain Personal Property, if any, Each Effective as of the Petition Date* (the "Motion"), and in support thereof would respectfully show the Court as follows:

## I. RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing the Debtors to (i) reject certain unexpired leases, including any guaranties thereof and any amendments, modifications, or subleases thereto (each a "Lease" and, collectively, the "Leases") for nonresidential real property located at the respective premises (collectively, the "Premises") set forth on **Exhibit A** attached hereto and (ii) to abandon certain equipment, fixtures, furniture, or other personal property (the "Personal Property"), if any, that may be located at the Premises, each effective as of the Petition Date; and (b) granting related relief.

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction of the Bankruptcy Cases and this Motion under 28 U.S.C. § 1334. This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 & 1409.

---

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of Anthony "Tony" Smith (the "Smith Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 subchapter V of title 11 of the United States Code (the "Bankruptcy Code"). Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the Smith Declaration.

3. The bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, Bankruptcy Rules 6006 and 6007, and rule 9013-1(b) and (c) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### III. BACKGROUND

4. On December 4, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 subchapter V of title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating the Bankruptcy Cases and creating the respective bankruptcy estates (collectively, the "Estates").

5. SKI, by and through its debtor-subsidiary operating entities (collectively, "Snap Kitchen"), offer healthy, affordable prepared meals for sale online nationwide and at all of their Texas locations. Each week, Snap Kitchen prepares more than 100,000 meals from freshly sourced ingredients, bringing breakfast, lunch and dinner, soups and salads, snacks, drinks and juices, as well as sweets, to its customers.

6. From 2010 to 2020, Snap Kitchen grew from one retail location and kitchen in Austin, Texas, to more than forty retail locations throughout Texas, Philadelphia, and Illinois. Through aggressive growth, both in terms of products offered and geographic expansion, the Debtors (and various non-debtor affiliates) have economically struggled. Therefore, throughout 2018 and 2019, Snap Kitchen focused on consolidating its successful operations and market segments, including maintaining several popular retail locations, building its online presence, and maximizing economies of scale by concentrating all of its food preparation operations in two industrial-size kitchens. In revising its business model to focus on these segments, Snap Kitchen entered 2020 on a positive, confident trajectory for future profitability.

7. Despite positive steps to "right-size" the business, the ongoing pandemic caused by the novel Coronavirus ("COVID-19") has created unnavigable strain on Snap Kitchen's operations

and liquidity. COVID-19 and the resultant state and local restrictions on retail business operations, increased costs to maintain safe working environments, and related impediments to normal, pre-pandemic business operations, have simultaneously reduced sales and increased costs. Though Snap Kitchen's employees and representatives have worked tirelessly during this pandemic, and its customers have proven themselves extremely loyal, economic realities have necessitated filing these Bankruptcy Cases.

8. A more fulsome description of the Debtors' background and other factual support for the relief request in this Motion and other first day motions is set forth in Smith Declaration [Dkt. No. 9], which is incorporated herein for all purposes.

## IV. LEASES TO BE REJECTED

9. In the lead-up to these Bankruptcy Cases, the Debtors, with the assistance of their advisors, undertook a comprehensive review and store-by-store analysis of their lease portfolio and the performance of each of their stores. The Debtors' lease obligations contributed significantly to their current financial challenges, and the Debtors determined, prepetition, that closure of the underperforming stores would be value-maximizing. Now, having filed these Bankruptcy Cases, the Debtors seek to reject sixteen (16) Leases associated with such stores. The Leases are identified and further described on **Exhibit A** attached hereto. The Debtors have sold or moved substantially all of their inventory located in these store locations, ceased operations, vacated the Premises, and abandoned possession and the keys to the respective landlords of these sixteen stores. To the extent such actions have not taken place, the Debtors will do so prior to the entry of any order granting this Motion.

10. None of the Leases are likely to generate a net economic benefit to the respective Estates, and the terms of each Lease are burdensome. Absent rejection, the Debtors would be obligated to pay rent under the Leases even as they have ceased operations at, and will no longer

be in possession of, the Premises. The Debtors likewise may be obligated to pay their proportionate share of common area charges, real property taxes, utility costs, insurance, and other related expenses associated with certain of the Leases. The Debtors estimate that rejecting the Leases will save a significant amount in rent and associated costs and have determined in their business judgment that such costs constitute a wasteful drain of Estate assets. In addition, the Debtors reviewed the market value of the Leases and determined, in their business judgment, that marketing the Leases for assignment or sublease to a third party would not generate sufficient value for the Estates, if any, relative to the costs of such an undertaking; which is particularly true in light of the continued costs associated with maintaining the leased Premises during a sub-lease marketing process.

11. Accordingly, in an effort to avoid unnecessary post-petition rent and administrative costs, the Debtors have determined in the exercise of their sound business judgment that rejecting the Leases set forth on **Exhibit A**, effective as of the Petition Date, is in the best interests of the Debtors, their Estates, and their creditors.

### V.     PERSONAL PROPERTY TO BE ABANDONED

12. To the extent that any Personal Property is located at the Premises, the Debtors will evaluate such remaining Personal Property to determine whether (a) the Personal Property is of inconsequential value or (b) the cost of removing and storing the Personal Property for future use, marketing, or sale, exceeds its value to the Debtors' Estates. Because the Debtors have shut down all operations at the Premises, the Personal Property, if any, will no longer be necessary for the administration of the Debtors' Estates.

13. Accordingly, to reduce post-petition administrative costs, and in the exercise of the Debtors' sound business judgment, the Debtors believe that the abandonment of the Personal

Property that may be located at each of the Premises, if any, is appropriate and in the best interests of the Debtors, their Estates, and their creditors.

## VI.  BASIS FOR RELIEF

A. **Rejection of the Leases Effective as of the Petition Date Provides the Debtors with Significant Cost Savings and is in the Best Interests of the Estates.**

14. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts is to permit the debtor-in-possession to renounce title to and abandon burdensome property).

15. A debtor's rejection of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. of Institutional Inv'rs v. Chi., M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943)); *see also In re Tex. Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts."). The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of "bad faith, whim, or caprice." *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

16. Rejection of an unexpired lease is appropriate where such rejection would benefit the estate. *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *see also Orion Pictures*, 4 F.3d at 1098–99 (stating that section 365 of the Bankruptcy Code permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject). Upon finding that a debtor exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code. *See In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

17. Rejection of the Leases is well within the Debtors' business judgment and is in the best interest of their Estates. The Debtors seek to reject the Leases in order to avoid the incurrence of any additional, unnecessary expenses related to the Leases and the maintenance of the facilities located on the Premises. Absent rejection, the Leases will continue to burden the Estates through the incurrence of administrative expenses, without any producing any revenue to justify such costs. Rejecting the Leases will increase the Debtors' liquidity and otherwise facilitate the efficient administration of the Debtors' Estates.

18. The Debtors have determined that there is no net benefit likely to be realized from efforts to market the Leases for potential assignment or sublease and that there is little if any likelihood that the Debtors will be able to realize value from the Leases. Accordingly, the Debtors

have determined that the Leases constitute unnecessary drains on the Estates' resources and, therefore, rejection of the Leases reflects the Debtors' exercise of sound business judgment.

**B.      The Abandonment of Personal Property is Appropriate.**

19.     The abandonment of the Personal Property is appropriate and authorized by the Bankruptcy Code. *See* 11 U.S.C. § 554(a). Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give a debtor in possession great deference to its decision to abandon property. *See, e.g., In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id*.

20.     Before deciding to abandon the Personal Property, if any, the Debtors will determine whether the costs of moving and storing such Personal Property outweigh any benefit to the Estates. Further, any efforts by the Debtors to move or market the Personal Property could unnecessarily delay the Debtors' surrender of the Premises, to the extent not already surrendered, and the rejection of the Leases. Accordingly, it is in the best interests of the Debtors and their Estates for the Debtors to abandon any remaining Personal Property located on the Premises.

**C.      The Court Should Deem the Leases Rejected as of the Petition Date.**

21.     Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See, e.g., In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *Pac. Shores Dev., LLC v. At Home Corp.* (*In re At*

*Home Corp.*), 392 F.3d 1064, 1065–71 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection), cert. denied, 546 U.S. 814 (2005).

22. Here, the balance of equities favors rejection of the Leases effective as of the Petition Date. Without such relief, the Debtors may incur unnecessary administrative expenses related to the Leases—agreements that provide no benefit to the Debtors' estates in light of the rent and related charges the Debtors are obligated to pay thereunder without corresponding and commensurate benefits to the estate. *See* 11 U.S.C. § 365(d)(3). The landlords under the Leases will not be unduly prejudiced if the rejection is deemed effective as of the Petition Date because, among other reasons, each of the Premises were surrendered pre-petition. Further, by this Motion, the landlords and, where applicable, their respective counsel are receiving notice of the Debtors' intention to reject the Leases substantially contemporaneous to the Petition Date. Based on this factual record, no party can reasonably assert that the Debtors seek to write any "revisionist history." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020) ("Federal courts may issue nunc pro tunc orders, or 'now for then' orders [] to reflect the reality of what has already occurred [but not as a] vehicle for . . . creating 'facts' that never occurred . . .") (internal citations omitted).

23. Accordingly, the Debtors respectfully request that the Court deem the Leases identified on **Exhibit A** rejected effective as of the Petition Date.

### VII.    RESERVATION OF RIGHTS

24. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any

particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## VIII.   NOTICE

25.   Notice of the hearing on the relief requested in the Motion has been provided by the Debtors in accordance and compliance with Bankruptcy Rules 6006(c) and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. The Debtors served parties in interest including (a) the Office of the United States Trustee for the Southern District of Texas; (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Debtors' proposed post-petition financing lender and counsel thereto; (d) the lessors of the Premises listed on **Exhibit A**; and (e) any party that requests service pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of the Order, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Page 11 content

Dated: December 7, 2020.

Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ John D. Cornwell*
John D. Cornwell
Texas Bar No. 24050450
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Grant M. Beiner
Texas Bar No. 24116090
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
jcornwell@munsch.com
tberghman@munsch.com
gbeiner@munsch.com

*Proposed Counsel for Debtors
and Debtors in Possession*

# EXHIBIT A

## LEASES TO BE REJECTED

| Store ID | Store Name | Debtor | Lease Counterparty | Lease Counterparty Address | Property Address |
|---|---|---|---|---|---|
| 064 | Fishtown | Snap Kitchen Philadelphia, LLC | 1325 Frankford Associates, LP | 1325 Frankford Associates, LP<br>P.O. Box 29248<br>Philadelphia, PA 19125<br><br>1325 Frankford Associates, L.P.<br>820 N 4th St.<br>Philadelphia, PA 19123<br><br>Lipsky and Brandt<br>c/o Louis I. Lipsky, Esq.<br>1101 Market St., Ste. 2820<br>Philadelphia, PA 19107 | 1325 Frankford Ave.<br>Philadelphia, PA 19125 |
| 043 | Old City | Snap Kitchen Philadelphia, LLC | 259 Market Partners, LP /<br>OFC Realty, LLC /<br>Alterra Property Group | Alterra Property Group<br>1936 Washington Ave.<br>Philadelphia, PA 19146<br><br>Jeff Pustizzi, Esq.<br>c/o Alterra Property Group<br>1613 Walnut Street<br>2nd Floor<br>Philadelphia, PA 19103<br><br>259 Market Partners, LP<br>Attn: Leonidas Addimando<br>1613 Walnut Street, 2nd Floor<br>Philadelphia, PA 19103 | 259 Market St.<br>Philadelphia, PA 19106 |
| 028 | Addison | Snap Kitchen Dallas, LLC | Addison Quorum Partners, Ltd.<br>c/o Beltway Commercial Real Estate | Addison Quorum Partners, Ltd.<br>c/o Beltway Commercial Real Estate<br>15280 Addison Rd., Ste. 301<br>Addison, TX 75001 | 4941 Beltline Rd.<br>Addison, TX 75254 |

| | | | | | |
|---|---|---|---|---|---|
| 018 | Preston Royal Village | Snap Kitchen Dallas, LLC | AmREIT Preston Royal NEC, LP / Edens | Edens<br>5910 N. Central Expressway<br>Suite 1680<br>Dallas, TX 75206<br><br>AmREIT Preston Royal NEC, LP<br>Attn: Legal Department<br>8 Greenway Plata, Ste. 1000<br>Houston, Texas 77046<br><br>AmREIT Preston Royal NEC, LP<br>PO Box 536856<br>Dept 2616 (T#67426)<br>Atlanta, GA 30353-6856 | 6025 Royal Ln.,<br>Suite 314-B<br>Dallas, TX 75230 |
| 017 | Uptown | Snap Kitchen Dallas, LLC | AmReit Uptown Dallas LP / Edens | Edens<br>5910 N. Central Expressway<br>Suite 1680<br>Dallas, TX 75206<br><br>AmREIT Uptown Dallas LP<br>Attn: Legal Department<br>8 Greenway Plata, Ste. 1000<br>Houston, Texas 77046<br><br>AmREIT Uptown Dallas LP<br>PO Box 536856<br>Dept 2616 (T#68625)<br>Atlanta, GA 30353-6856 | 2222 McKinney Ave.<br>Suite 110<br>Dallas, TX<br>75201 |
| 060 | Villanova | Snap Kitchen Philadelphia, LLC | Enrico Partners, LP / Provco Group | The Provco Group<br>795 East Lancaster Ave., Suite 200<br>Villanova, PA 19085<br><br>Enrico Partners<br>795 East Lancaster Avenue, Ste. 200<br>Villanova, PA 19085 | 775 E. Lancaster Ave., Suite 120<br>Villanova, PA 19085 |
| 013 | Avery Ranch | Snap Kitchen #1, LLC / Snap Kitchen Investments, LLC | WSP Development #6, Ltd./ StoneCrest Investments, LLC | WSP Development #6, Ltd.<br>c/o StoneCrest Investments, LLC<br>595 Round Rock West Dr.<br>Suite 701<br>Round Rock, TX 78681 | 10526 W. Parmer Lane, Bldg. 3<br>Austin, TX 78717 |

| 021 | Fitzhugh | Snap Kitchen Dallas, LLC | Fitzhugh at Central, L.P. c/o Venture Commercial Real Estate | Fitzhugh at Central, L.P. c/o Venture Commercial Real Estate, LLC 8235 Douglas Ave., Suite 720 Dallas, TX 75225 | 4164 North Central Expressway Dallas, TX 75204 |
|---|---|---|---|---|---|
| 040 | Granery | Snap Kitchen Philadelphia, LLC | Gran Development Partners LP | Gran Development Partners LP 11777 San Vicente Boulevard, Ste. 900 Los Angeles, CA 90049<br><br>Gran Development Partners LP c/o Lowe Enterprises 1515 Market Street Philadelphia, PA 19102<br><br>Randolph Joy Law LLC 555 Croton Rd., Ste. 120 King of Prussia, PA 19406<br><br>Gran Development Partners, LP 1901 Callowhill St. Philadelphia, PA 19130 | 771 E. Lancaster Ave., Suite 120 Villanova , PA 19085 |
| 038 | Southlake – Kimball Crossing | Snap Kitchen Dallas, LLC | Greenway - 1709/Eleven II, LP / Trinity Interests | Trinity Interests 12740 Hillcrest Suite 101 Dallas, TX 75230<br><br>Greenway – 1709/Eleven II, LP 2808 Fairmount, Ste. 100 Dallas, Texas 75201 | 2175 E. Southlake Blvd. Suite 130 Southlake, TX 76092 |
| 001 | Triangle | Snap Kitchen #1, LLC / Snap Kitchen Investments, LLC | Infinity Triangle Austin LLC / Cielo Property Services, LLC | Cielo Property Services, LLC 2919 Commerce St. Suite 595 Dallas, TX 75226<br><br>Infinity Triangle Austin LLC PO Box 530052 Department 1033 Atlanta, GA 30353-0052 | 4616 Triangle Ave. Suite 200 Austin, TX 78751 |

| 047 | Malvern | Snap Kitchen Philadelphia, LLC | JMP Malvern Associates / Highland Management Corporation | Highland Management Corporation 310 Yorktown Plaza Elkins Park, PA 19027<br><br>JMP Malvern Associates, L.P. 8301 Fairview Road Elkins Park, PA 19027 | 5 Morehall Rd., Suite 700a Fort Worth, TX 76107 |
|---|---|---|---|---|---|
| 063 | Bella Vista | Snap Kitchen Philadelphia, LLC | L-W Properties / RR Endeavors, LLC | L-W Properties 420 Bainbridge St. Philadelphia, PA 19147<br><br>RR Endeavors, LLC 1021 Mason Avenue Drexel Hill, PA | 601 S. 10th St. Philadelphia, PA 19147 |
| 041 | Rittenhouse Square | Snap Kitchen Philadelphia, LLC | Seung Ho Kim | Seung Ho Kim 1822 Pine Rd. Huntingdon Valley, PA 19006<br><br>Seung Ho Kim 1852 Pine Rd. Huntingdon Valley, PA 19006<br><br>John Pak, Esquire 8029 Old York Road Elkins Park, PA 19027 | 1901 Chestnut Street & 50 South 19th Street St. Philadelphia, PA 19103 |
| 019 | Oak Lawn | Snap Kitchen Dallas, LLC | The I's of Texas Family Partnership LP | The I's of Texas Family Partnership, L.P. 12720 Hillcrest Rd., Suite 525 Dallas, TX 75230 | 4436 Lemmon Ave. Dallas, TX 75219 |
| 039 | Shops at Legacy | Snap Kitchen Dallas, LLC | The Shops at Legacy (RPAI) L.P. / RPAI Southwest Management LLC | RPAI Southwest Management, LLC 285 Grand Ave., Suite 210 Southlake, TX 76092<br><br>The Shops at Legacy (RPAI) c/o RPAI Southwest Management LLC 2021 Spring Road, Ste. 200 Oak Brook, IL 60523<br><br>The Shops at Legacy (RPAI) c/o RPAI Southwest Management LLC 5741 Legacy Dr., Ste. 315 Plano, TX 75024 | 5717 Legacy Dr., Suite 120 Plano, TX 75024 |